(\*) SOUTHARD *versus* PLUMMER *&* al.

A marriage contracted since the statute of 1844, c. 117, confers upon the husband no ownership in property, which, at the time of the marriage, belonged to the wife.

The right to the exclusive possession and to the exclusive control of such property remains to her after the marriage as fully as before.

The entry upon her land and the removal of her personal property give to the husband no right of action against persons acting under her directions.

ON EXCEPTIONS from *Nisi Prius*, SHEPLEY, C. J., presiding.

*Trespass* for breaking and entering the plaintiff's close, and carrying away therefrom several articles of his personal property.

In March, 1848, the plaintiff married a woman who owned a farm, with a house upon it, and articles of furniture and other personal property.

Testimony was introduced tending to show, that after the marriage and while the plaintiff and his wife were residing together in the house, the defendants entered and removed from the house the articles as mentioned in the declaration of the plaintiff's writ.

The defendants introduced evidence tending to prove, that the articles belonged to the wife before and at the time of the marriage, and that it was by her order that they entered the house and carried them away.

The jury were instructed, that if the real estate entered

upon and the articles of property taken, were the property of the wife before the marriage, and if the entry and taking were by her direction and under her inspection, the action was not sustainable.   To that instruction the plaintiff excepted, the verdict having been against him.

That the legal positions pertaining to this case may the more distinctly be understood, some extracts from recent statutes are here presented. —

"An Act to secure to married women their rights in property, passed in 1844. —

" Be it enacted, &c.   Section 1.   Any married woman may become seized or possessed of any property, real or personal, by direct bequest, demise, gift purchase or distribution, in her own name, and as of her own property ; (provided, it shall be made to appear by such married woman, in any issue touching the validity of her title, that the same does not in any way come from the husband after coverture.)

"Sect. 2.   Hereafter, when any woman possessed of property, real or personal, shall marry, such property shall continue to her notwithstanding her coverture, and she shall have, hold and possess the same, as her separate property, exempt from any liability for the debts, or contracts of the husband.

" Sect. 3.   Any married woman possessing property by virtue of this Act, may release to the husband the right of control of such property, and he may receive, and dispose of the income thereof, so long as the same shall be appropriated for the mutual benefit of the parties."

" An Act, passed in 1847, to amend an Act 'to secure to married women their rights in property.'

" Sect. 1.   The Act 'to secure to married women their rights in property,' passed 22 March, 1844, shall be amended by striking out the proviso in the first section thereof, which proviso is hereby repealed, and inserting in lieu thereof at the end of the section the following words; 'exempt from any liability for the debts or contracts of her husband;' so

that the section as amended shall be as follows; 'Sect. 1. Any married woman may become seized or possessed of any property, real or personal, by direct bequest, demise, gift, purchase or distribution, in her own name, and as of her own property, exempt from the debts or contracts of her husband.'

" Sect. 2. The said first section shall be subject to the proviso, that if it shall appear that the property so possessed, being purchased after marriage, was purchased with the moneys or other property of the husband, or that the same, being the property of the husband, was conveyed by him to the wife, directly or indirectly, without adequate consideration, and so that the creditors of the husband might thereby be defrauded, the same shall be held for the payment of the prior contracted debts of the husband."

" An Act passed August 10, 1848, in addition to 'an Act to secure to married women their rights in property.'

" Sect. 1. Any married woman, who is seized and possessed of property, real or personal, as provided for in the Act to which this is additional, shall be entitled to the appropriate remedies, as authorized by law in other cases, to enforce and protect her rights thereto ; and she may commence, prosecute or defend any suit, in law or equity, to final judgment and execution, in her own name, in the same manner as if she were unmarried, or she may prosecute or defend such suit jointly with her husband. And she is hereby authorized to make and execute any bond or contract, or to do and perform any matter or thing, which may be necessary to the prosecution or defence of any such suit, but no arrest of the person of any married woman shall be authorized under any execution, which may be recovered against her.

" Sect. 2. In all such suits, where the wife shall prosecute and defend in her own name, judgment shall be rendered and execution issued and enforced by or against her, in the same manner as if judgment had been rendered for or against her before her marriage.

" Sect. 3. When any married woman shall die intestate, seized or possesssed of any property, real or personal, in her

own name, exempt from the debts or contracts of her husband, the same shall descend or be distributed to her heirs; but any married woman may, by will duly executed, devise and bequeath any property of which she is, or may be hereafter so seized or possessed."

" An Act amendatory, passed February 23, 1852.

" Any married woman who is or may be seized and possessed of property real or personal, as provided for in the Acts to which this is additional, shall have power to lease, sell, convey and dispose of the same and to execute all papers necessary thereto in her own name, as if she were unmarried, *and no action shall be maintained by the husband of any such married woman for the possession or value of any property held or disposed of by her in manner aforesaid.*"

Act of April 26, 1852. — " Sect. 1. Hereafter, when any man shall marry, his property shall be exempt from any and all liability for the debts or contracts of his wife, made or contracted before marriage; but an action to recover the same may be maintained against such husband and wife; and the property of said wife, held in her own right, if any, shall alone be subject to attachment, levy or sale on execution, to satisfy all liabilities for such debts and contracts, in the same manner as if she were unmarried.

" Sect. 2. In any such action, the wife may defend alone, or jointly with her husband; but no arrest of the person of such husband or wife shall be authorized upon any writ or execution arising under this Act."

*Ingalls,* for the plaintiff.

1. By the common law, the rights of the husband in property of the wife were well settled and clearly defined.

2. Prior to the marriage of the plaintiff in March, 1848, the " Act to secure to married women their rights in property," of March 23, 1844, and the Act additional thereto of Aug. 2, 1847, had been passed. The alterations and additions in the latter Act do not affect this case. The former Act does not authorize a *feme covert* to sell, devise, lease or otherwise make any disposition of her property, so as to deprive

the husband during his life of all benefit to be derived from it ; and the common law, regulating the rights and duties of husband and wife, must be regarded as operative so far as it had not been changed by the provisions of the statute. *Swift v. Luce*, 27 Maine, 285. By the marriage of the plaintiff therefore, he acquired in the property of the wife, the right to its possession, use and enjoyment under the common law.

3. This right was a vested right, an interest in property, which it was not competent for the Legislature, by any Act subsequent to the marriage, to take away. Statutes, therefore, passed since 1848, can impair none of the plaintiff's common law rights. *Kennebec Proprietors* v. *Laboree*, 2 Greenl. 275.

4. The control of the wife's property implied by the 2d sect. of the statute of 1844, is a limited control, extending only to its defence and protection, and consistent with the right of the husband to a common enjoyment with the wife of its use and income. Act of 1848, c. 73 ; *Swift* v. *Luce*, 27 Maine, 285.

5. The case finds sufficient to warrant a jury in coming to the conclusion, that the wife had released to the husband the control of the property, which control it was not competent for the wife to revoke. This question should have been presented to the jury.

*Ruggles*, on the same side.

The Act of 1847 has no application to the facts of this case. The Act of 1848 was subsequent to the marriage, and can therefore have no effect. The question therefore is solely upon the statute of 1844. That statute, being so widely in derogation of common law rights, is to receive a strict construction. To the statute itself, I make no objection. My objection is merely to the construction of it claimed by the plaintiff's counsel.

In view of the immense importance to domestic happiness, it is not to be supposed, that the Legislature could intend the entire removal from the husband of all oversight and control of the wife's personal estate. It would at once degrade and

discharge the marital relation, set the parties at variance, and in all cases facilitate, and in many cases require a separation. If the husband, from any misfortune become poor, she may deny him bread, and transfer him to the poor house, while herself luxuriating in wealth. He may be expelled from the house, and her paramour substituted to the possession. It is a divorce of the husband, without notice of the process.

The construction, claimed by the defendants, with all its boasted tenderness and humanities, degrades the domestic relation and is fraught with mischiefs, which if not immediately developed, will leave terrific marks upon the next age.

The point at issue has been already decided in *Swift* v. *Luce*, 27 Maine, 285. That decision shows, that the Act of 1844, (the only one applicable to this case,) did not authorize a *feme covert* to sell or dispose of her personal property, without the assent of her husband; and that the only object of the law was to protect her property from liability to pay her husband's debts.

The Act of 1848, authorizing an action jointly by the husband and wife, clearly indicates that he had some rights in or control over her property.

The Act of 1852 gives to the wife authority to dispose of all her estate. Does not this imply, that prior to that Act, she had no such authority? Is it not a Legislative exposition of the meaning of the former Acts?

*Lowell* and *Carleton*, for the defendants.

WELLS, J. — Both the real and personal property in reference to which the trespass is alleged to have been committed, belonged to the wife of the plaintiff at the time of the coverture, and when the acts, of which complaint is made, were done by the defendants. They acted under the authority of the plaintiff's wife, and the question presented is, whether they were justified in conforming to her orders and directions.

By the common law the husband has a freehold estate in the real property of the wife, and the use and control of it, and

by the marriage the title to personal chattels in her possession passes to him.

By the Act of March 22, 1844, c. 117, § 2, it is provided, that "hereafter when any woman possessed of property, real or personal, shall marry, such property shall continue to her notwithstanding her coverture, and she shall have, hold and possess the same, as her separate property, exempt from any liability for the debts or contracts of the husband."

The phrase "such property shall continue to her notwithstanding her coverture," implies that it shall remain her property, and that the coverture shall not deprive her of it, and the possession of it "as her separate property" gives her an entire dominion over it. This language could not have been employed simply for the purpose of exempting the property from attachment for the debts of the husband, and from liability on his contracts. It is very evident, that something more was intended, that her right of property and control over it should remain, not only against the creditors and contracts of the husband, but against the husband himself.

This construction is strengthened by the terms of the third section of the Act, which provides, that "Any married woman possessing property by virtue of this Act, may release to the husband the right of control of such property, and he may receive and dispose of the income thereof; so long as the same shall be appropriated for the mutual benefit of the parties." The control of the property having been given to the wife, it then became necessary by further legislation to authorize her to release it to the husband.

And as the wife of the plaintiff did not release it to him, it continued to her and she could direct the defendants to enter upon the real estate, and take and carry away the personal property. It would be doing violence to the language and spirit of the Act to say, that it did not confer upon the wife the control of the property independently of her husband. And she might exercise that control herself personally, or through the agency of another. The statute having given to her the direction and management of her property, would

necessarily and by implication clothe her with all the power requisite for the performance of those acts, and would justify the defendants, who were employed by her.

*Exceptions overruled.*

HOWARD and HATHAWAY, J. J., concurred. RICE, J. dissented.